EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* WILSON ACEVEDO COLÓN, acusado y apelante.

*Número:* CR-74-50    *Resuelto:* 7 de marzo de 1975

502

Santos P. Amadeo y José Enrique Amadeo, abogados del apelante; Myriam Naveira de Rodón, Procuradora General y Ruth Tentori, Procuradora General Auxiliar, abogadas de El Pueblo.

PER CURIAM: Una joven regresaba de Manatí a su casa en la Urbanización Vista Mar, vía Dorado y Levittown. Al llegar a Dorado, su vehículo sufrió un desperfecto y tuvo que detenerse. Dos jóvenes que viajaban en otro vehículo se acercaron y le ofrecieron ayuda. Llevaron el vehículo de la joven a una estación de servicio cercana. Allí lo arreglaron pero le informaron que el vehículo tenía los frenos defectuosos. Uno de

los jóvenes, el aquí apelante, se ofreció a acompañarla conduciéndole el automóvil. Ella aceptó. El otro joven los seguiría. La joven declaró que durante el trayecto hasta casi llegar a la Urbanización Vista Mar, su acompañante se portó como un caballero, pero que cerca de la Urbanización Vista Mar dirigió el automóvil en dirección a la Base Muñiz en Isla Verde. Declaró la joven que ella le llamó a atención al efecto de que había tomado una ruta equivocada. No obstante, el apelante viró y se internó en un solar vacío donde estacionó el vehículo. El amigo que los había seguido desde Dorado aparcó a la orilla de la carretera. Relata la joven que el apelante le pidió un beso, que ella protestó pero que la besó a la fuerza, luego le subió el *sweater* para acariciarle los senos, que forcejearon y le dio unas bofetadas, que ella se dio en la cabeza al chocar con la puerta del vehículo y que finalmente la poseyó.

Por estipulación se admitió en evidencia un certificado del médico que examinó a la joven. En dicho documento se expresa:

"Certifico que he practicado un examen vaginal a la paciente Milagros Aviles Díaz y presenta himen lacerado con introito vaginal edematoso, eritematoso y sangrante. Estos son signos definitivos de Desfloración reciente, en cuyo acto pudo intervenir la violencia. Presenta además diversos equimosis, erosiones y hematomas en diversas partes del cuerpo compatibles con traumas producidos por dedos y manos abiertas o cerradas, racientemente. (Pudo ocurrir anoche 1-7-73.)"

La versión del apelante concuerda con los hechos antes relatados, excepto en aquella parte en que la joven manifiesta que las relaciones íntimas fueron en contra de su voluntad. Mientras la joven afirma que la poseyó a la fuerza, el apelante declara que hubo una entrega voluntaria.

Consumado el acto, cerca de las diez de la noche, el apelante hizo funcionar el vehículo y lo sacó a la carretera. Le preguntó a la joven si la podía ver otra vez y ésta contestó que estaba bien pero que le diera el número de su teléfono o

una dirección donde pudiera localizarlo. El apelante le dio un número de teléfono y la dirección de una tía y se bajó del vehículo. En ese momento se acercó el amigo en el otro vehículo. La joven se dirigió a su casa a donde llegó poco después de las diez. No le informó nada de lo sucedido a su madre, por ser ésta una persona muy nerviosa, a pesar de que ésta le preguntó qué le pasaba, ya que la veía llorando. Sólo le informó que su carro había sufrido una avería. En ese momento llega una hermana casada y le cuenta todo lo ocurrido. Su hermana le dijo que fuera a dar cuenta a la policía, que ella esperaría a su padre para contarle lo sucedido y que entonces iría al cuartel. La perjudicada fue al cuartel y con la información que le suministró a la policía localizaron y arrestaron al apelante.

Cuatro errores apunta el acusado. Ninguno tiene mérito.

I. Apunta que su renuncia a que el juicio se celebrara ante jurado es nula e ineficaz.

El acusado estuvo representado en el tribunal de instancia por los mismos abogados que lo representaron ante este Tribunal.

██ Veamos cómo ocurrió la renuncia y qué le informó el juez al acusado. Surge de la transcripción de evidencia que el juez expresó:

"Los compañeros habían informado que estaban preparados con una salvedad que hizo el compañero para producir un testigo que no había comparecido en el día de hoy y habían comunicado el compañero, ambos compañeros, que el caso sería por Tribunal de derecho y les pregunto que si les explicaron todo lo relativo la derecho a juicio por Jurado.

Lic. Amadeo, Hijo:

Así es, Vuestro Honor.

Hon. Juez:

Usted es Wilson Acevedo Colón?

R—Sí, señor.

P—Usted es el acusado en este caso?

R—Sí, señor.

P—A usted se le imputa un delito de Violación y ese es un delito grave y usted tiene un derecho constitucional y estatutario a que caso se ventile por Jurado. Sin embargo, ya usted oyó a sus abogados que informaron al Tribunal que usted quiere renunciar a ese derecho que usted tiene a juicio por Jurado y que es su deseo de que su caso se ventile por Tribunal de derecho, o sea, que sea el Juez el que lo juzgue como juez de los hechos y no el Jurado. Así es?

R—Sí, señor.

P—A usted nadie lo ha coaccionado ni lo ha amenazado ni lo ha intimidado ni lo ha obligado ni le han prometido nada para que renuncie a ese derecho a juicio por Jurado?

R—No, señor.

P—Usted está consciente de lo que está haciendo?

R—Sí, senor.

P—Usted consultó con sus abogados sobre su deseo de renunciar a su derecho a juicio por Jurado?

R—Sí, señor.

P—Y ellos le explicaron las consecuencias y las implicaciones y lo que significa esa renuncia a ese derecho constitucional al juicio por Jurado?

R—Sí, señor.

P—Y le explicaron la diferencia entre un juicio por Jurado y un juicio por Tribunal de derecho?

R—Sí, señor.

P—Y usted entendió todo lo que ellos le dijeron?

R—Sí, señor.

P—O sea, que usted no tiene ninguna duda, sabe lo que es un juicio por Jurado y un juicio por Tribunal de derecho; sabe la diferencia entre uno y otro y sabe las consecuencias y lo que significa esa renuncia a juicio por Jurado?

R—Sí, señor.

P—No tiene ninguna duda?

R—No, señor.

P—Qué edad usted tiene?

R—Veintitrés años.

P—Y hasta qué grado estuvo en la escuela?

R—Cuarto año y sigo estudiando.

P—Qué está estudiando?

R—Gerencia.

P—En la Universidad de Puerto Rico?

R—No, en la Vocacional Miguel Such."

Vemos pues, que el apelante es graduado de cuarto año de escuela superior, sigue estudios de gerencia en la Escuela Miguel Such y que tuvo el asesoramiento, antes de tomar la decisión de renunciar al juicio por jurado, del Lic. Santos P. Amadeo, quien posiblemente es el abogado que en mayor número de ocasiones ha planteado esta cuestión ante este Tribunal, para lo cual necesariamente dicho letrado tiene que haber hecho un estudio exhaustivo del asunto. El juez se cercioró de que la renuncia era libre y voluntaria y expresamente le preguntó al apelante si sus abogados le habían explicado la diferencia entre un juicio por jurado y un juicio por tribunal de derecho y las consecuencias de la renuncia, y el acusado contesta "Sí, señor." Su representación legal no hizo constar que eso no era cierto sino por el contrario admitió a preguntas del juez de instancia que había explicado al apelante todo lo relativo al derecho a juicio por jurado. Ciertamente no constituye una buena y recta conducta profesional el que un abogado no plantee la falta de voluntariedad de la renuncia al jurado al tribunal de instancia, y aún más, informar al tribunal que el apelante ha sido instruido sobre ello, para luego apuntarlo como error ante el tribunal apelativo. Ver *Pueblo* v. *Rodríguez Irizarry*, 103 D.P.R. 98 (1974).

El interrogatorio transcrito precedentemente revela que el acusado fue informado por el juez que presidió el juicio de su derecho a que su caso se viera ante jurado y que se cumplió con lo exigido por la Regla 111 [1] de las de Procedimiento Criminal.

---

[1] Dispone así dicha Regla:

"Las cuestiones de hecho en casos de delito grave (*felony*) y, salvo lo dispuesto en leyes especiales, en casos de delito menos grave (*misdemeanor*), siempre que originalmente se presentare la acusación en el Tribunal Superior y fueren también de la jurisdicción del Tribunal de Distrito, habrán de ser juzgadas por el jurado a menos que el acusado renunciare expresa

■ II. Como prueba de corroboración el Estado presentó a la hermana de la joven perjudicada. El apelante sostiene que constituyó error la admisión de su declaración, ya que la joven después del acto vio primero al compañero del acusado y luego habló con su madre y nada les comunicó. Para disponer de este apuntamiento, procede reexaminar lo ocurrido. Cerca de las diez de la noche, el acusado termina el acto. Salen a la carretera y la joven observa al amigo del acusado que está en el otro vehículo. Aparte de que no es razonable esperar que ella le hiciera manifestación alguna a esta persona, lo cierto es que ella no tuvo la oportunidad de hablar con él, pues éste estaba en el otro vehículo. Recuérdese que la joven llegó a su casa a las diez de la noche y no le hizo manifestación alguna a su madre debido a que ésta es muy nerviosa, pero su hermana llegó a los cinco minutos e inmediatamente le relató lo ocurrido. Es obvio que la declaración de la hermana es admisible, porque habiendo transcurrido tan poco tiempo, apenas quince minutos desde que se separó del apelante, no tenía tiempo para fabricar una historia y por el contrario el relato que le hizo tenía la garantía de una manifestación espontánea.

III. Pretende el apelante que revoquemos la convicción por no haber el juez dictado una resolución con conclusiones de hecho y de derecho que justificaran la actuación del tribunal. Sostiene que "dicha actuación del juez sentenciador está en conflicto con la Cláusula del Debido Proceso de Ley y de la Igual Protección de las leyes de la Quinta Enmienda de la Constitución de los Estados Unidos, ya que en procesos civiles donde no hay jurado, el juez sentenciador está en la obligación de dictar una resolución con conclusiones de hecho y de derecho."

Apunta la representación legal del apelante que desde 1966

y personalmente el derecho a juicio por jurado. El tribunal podrá conceder el juicio por jurado en cualquier fecha posterior a la lectura de la acusación."

la Regla 23 (c) (²) de las de Procedimiento Criminal en la jurisdicción federal imponen al juez sentenciador en un caso criminal visto sin jurado, la obligación de formular conclusiones de hecho y de derecho. No es correcta tal afirmación. La Regla 23 (c) de las de Procedimiento Criminal desde su aprobación, el 21 de marzo de 1946, requería que en casos criminales vistos sin jurado, el juez formulara determinaciones de hecho. Nunca ha exigido que se formulen conclusiones de derecho. La enmienda del año 1966 lo único que hizo fue adicionarle la segunda oración a la 23 (c), según queda citada al escolio 2.

■ El propósito de hacer conclusiones de hecho en los casos criminales que se ventilan sin jurado es para facilitar el proceso apelativo. *United States* v. *Critchlow*, 459 F.2d 793 (10th Cir. 1972). No hay envuelto derecho constitucional alguno. En las jurisdicciones donde el procedimiento no lo exige, el juez no está en la obligación de hacer las determinaciones de hecho. *People* v. *Golston*, 375 P.2d 51 (Calif. 1962), *cert. den.* 372 U.S. 955 (1963).

IV. Por último, el apelante sostiene que la sentencia es nula porque no se probó más allá de duda razonable la comisión del delito que se le imputó. La relación de los hechos que antes hicimos dispone del apuntamiento. La prueba creída por el Juez contiene todos los elementos del delito imputado.

*Se confirmará la sentencia apelada.*

---

(²) Dispone así:

"(c) *Juicio Sin Jurado.* En un caso ventilado sin jurado el tribunal dictará su fallo y hará, en adición, a solicitud del acusado determinaciones de hechos específicas. Si se radica una opinión o memorando de decisión, será suficiente si las determinaciones de hecho aparecen ahí incluidas."